IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW SCOTT WALLACE

       v.

                                :   Civil Action No. DKC 13-3473

JEFFREY THOMAS TROST, M.D.,
et al.

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case are three motions to dismiss filed by Defendants: (1) Stephen William Wiley and Wiley Pharmacy of Quarryville, Inc. (collectively, "the Wiley Defendants") (ECF No. 9);[1] (2) Stephen G. Diamantoni, Diamantoni & Associates, and William Vollmar, II (collectively, "the Diamantoni Defendants") (ECF No. 14); and (3) Jeffrey Thomas Trost ("Dr. Trost") (ECF No. 21). Also pending are the following motions filed by Plaintiff Andrew Scott Wallace: (1) motion to strike a reply brief filed by the Diamantoni Defendants (ECF No. 32); (2) motion for a more definite statement from Defendants Sam Blank, Luke Beiler, and Annette Wallace (ECF No. 35); (3) motion to show status of Plaintiff's motion for a more definite statement (ECF No. 38); (4) motion for summary judgment as to Defendants Sam Blank, Luke

---

[1] According to Defendants, Wiley Pharmacy of Quarryville, Inc. is incorrectly identified in the complaint as Wiley's Pharmacies. (ECF No. 9-1, at 1).

Beiler, Annette Wallace, and Dr. Trost (ECF Nos. 39 & 41).[2]  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the three motions to dismiss will be granted. Plaintiff's motion to strike will be denied.  Plaintiff's motions for a more definite statement, to show status, and for summary judgment will be denied as moot.

## I.   Background[3]

Beginning in 1999, Plaintiff Andrew Scott Wallace, his then wife Annette Wallace, and their two children began regular doctor visits to the Medical Office of Diamantoni & Associates Family Practice, P.C.  (ECF No. 3, at 3).  In early 2003, Plaintiff learned that his wife Annette Wallace had been having an adulterous affair with Dr. Jeffrey Trost of Diamantoni & Associates since 2002.  Dr. Trost initially denied the affair when Plaintiff confronted him in 2003, but then admitted the affair and the two made a "verbal agreement" that Dr. Trost would end the affair.  Nevertheless, Dr. Trost apparently resumed relations with Plaintiff's wife.  Plaintiff asserts that other members of Diamantoni & Associates, including Defendants

---

[2] ECF No. 41 is a corrected signed version of Plaintiff's initial motion for summary judgment.

[3] The facts are drawn from Plaintiff's amended complaint, the operative pleading here.  (ECF No. 3).

James Elia and Dr. William Vollmar II, were aware of this relationship, but did nothing to stop it.

Plaintiff alleges that throughout the ongoing affair with Dr. Trost, Annette Wallace neglected her duties with regard to Amish Builders, a business that both Plaintiff and his wife operated. Specifically, Plaintiff asserts that Annette Wallace failed to file "necessary and required personal property returns, sales tax returns and income tax returns for the business," and failed "properly [to] account for income and expenses of the business," causing the economic failure of the company. (*Id.* ¶ 16). Plaintiff argues that his wife's actions were part of a scheme designed to embezzle funds from Amish Builders, which then were used by Annette and Dr. Trost for their personal benefit. Plaintiff contends that this nefarious activity resulted in Amish Builders accruing $650,000 in debt.

Although not entirely clear from the complaint, in the aftermath of his company's financial troubles sometime in December 2004, a receiver took over the business. (*Id.* ¶ 20). Plaintiff alleges that he was forced to turn over power of attorney to Samuel Blank after Plaintiff was unable to pay back approximately $250,000 in merchandise supplied to Amish Builders. (*Id.* ¶ 21). Samuel Blank then appointed Luke Beiler to serve as an examiner/accountant of the company's business records. (*Id.* ¶¶ 20-21). Plaintiff contends that once Mr.

Blank gained control over the company, he threatened to "ruin him" and instructed other suppliers to cease doing business with Amish Builders until the debts were repaid.   According to Plaintiff, Mr. Blank instructed Mr. Beiler to cancel all of Plaintiff's personal and company credit cards.   (*Id.* ¶ 23).   Six years later, in 2010, Mr. Blank hired Annette Wallace as a salesperson and bookkeeper for his company, B&B Structures. (*Id.* ¶ 25).

In 2005, divorce proceedings commenced between Plaintiff and Annette Wallace.   During Dr. Trost's deposition in 2006, Plaintiff apparently discovered that Annette had been prescribed "alprazolam" or Xanax, and that Dr. Trost allowed Annette to bring alcoholic beverages into the medical office.   (*Id.* ¶ 26). Immediately following the deposition, Plaintiff went with his divorce attorney to Wiley Pharmacy of Quarryville, Inc., demanding records of his wife's drug prescriptions.   (*Id.* ¶ 27). Stephen William Wiley, the pharmacist in charge on January 24, 2006, explained that all such records were destroyed.   (*Id.* ¶ 28).   Plaintiff alleges that Stephen Wiley and the pharmacy intentionally destroyed the records at the request of Dr. Trost.

At some point in 2006, Plaintiff informed Dr. Trost's wife about Dr. Trost's affair with Annette Wallace and sought to have his medical license revoked.   Plaintiff avers that, consequently, Dr. Trost hired an arsonist to set fire to

Plaintiff's home, which was completely destroyed. (*Id.* ¶ 30).
Plaintiff also contends that he received threats from Dr. Trost
during this time period, which were relayed to him by Annette
Wallace. (*Id.* ¶¶ 31-32).

According to the amended complaint, from 2006 through 2009,
Plaintiff continuously filed complaints against Dr. Trost with
the Pennsylvania State Board of Medicine, the Medical Ethics
Board, the Pennsylvania District Attorney's Office, and the
Office of Governor of Pennsylvania. (*Id.* ¶ 33). By Plaintiff's
own admission, however, the complaints were investigated, but
proved unavailing.

## II.  Procedural Background

Plaintiff, proceeding *pro se*, filed a complaint on November
19, 2013, alleging violations of the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*,
against the following Defendants:   Stephen G. Diamantoni;
Diamantoni & Associates; James M. Elia; Jeffery Thomas Trost;
William Vollmar, II; Annette Wallace; Stephen William Wiley; and
Wiley Pharmacy of Quarryville, Inc.   (ECF No. 1).[4]   Plaintiff
filed an amended complaint on December 4, 2013, adding Sam Blank
and Luke Beiler as new defendants.  (ECF No. 3).  Luke Beiler,
Sam Blank, and Annette Wallace answered the complaint on January

---

[4] Plaintiff also named two defendants as "John or Jane Doe."

13, 2014, indicating that they strongly denied all the allegations in the complaint. (ECF No. 7).[5] Defendants William Wiley and Wiley Pharmacy of Quarryville moved to dismiss (ECF No. 9), Plaintiff opposed the motion (ECF No. 17), and Defendants replied (ECF No. 20).  Plaintiff then filed a surreply.  (ECF No. 26).  Defendants Diamantoni, Diamantoni & Associates, and William Vollmar, II also moved to dismiss (ECF No. 14), Plaintiff opposed that motion (ECF No. 19), and they replied (ECF No. 27).  Plaintiff filed a surreply (ECF No. 34) and also moved to strike the Diamantoni Defendants' reply brief (ECF No. 32).  Defendant Jeffrey Trost filed a separate motion to dismiss (ECF No. 21), Plaintiff opposed his motion (ECF No. 31), and Dr. Trost replied (ECF No. 36).  Plaintiff then filed the following motions: (1) motion for a more definite statement from Defendants Sam Blank, Luke Beiler, and Annette Wallace (ECF No. 35); (2) motion to show status of his motions (ECF No. 38); (3) motion for summary judgment as to Defendants Sam Blank, Luke Beiler, Annette Wallace, and Jeffrey Trost (ECF No. 39); and (4) a corrected motion for summary judgment (ECF No. 41).

---

[5] It does not appear that an executed summons was returned as to Defendant James M. Elia. (*See* ECF No. 8).

### III. Analysis

#### A.   Motion to Dismiss Filed by the Wiley Defendants

The Wiley Defendants seek dismissal of Plaintiff's complaint on two grounds: (1) lack of personal jurisdiction; and (2) failure to state a claim upon which relief can be granted. (ECF No. 9).

#### 1.   Personal Jurisdiction

The first issue that must be decided is whether personal jurisdiction can be exercised over the Wiley Defendants "because the dismissal of a case on an issue relating to the dispute, such as a failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006) (*citing Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 584 (1999). Insofar as the Wiley Defendants contend that the court lacks personal jurisdiction, their motion is governed by Fed.R.Civ.P. 12(b)(2). When personal jurisdiction over a nonresident defendant is challenged by a Rule 12(b)(2) motion, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If jurisdiction turns on disputed facts, the

7

challenge may be resolved after a separate evidentiary hearing, or the ruling may be deferred pending the introduction of evidence at trial relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Where, as here, a ruling is issued without conducting an evidentiary hearing and based solely on the complaint, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396. In deciding whether the plaintiff has proved a *prima facie* case, all reasonable inferences arising from the proof must be drawn in favor of the plaintiff, and all factual disputes must be resolved in his or her favor. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

The Wiley Defendants assert that they are not residents of Maryland; both are residents of Pennsylvania. (ECF No. 9-1). It is undisputed that none of the actions taken by these two Defendants occurred in Maryland. Plaintiff asserts in his opposition to the motion to dismiss that the court has personal jurisdiction because the "RICO conspiracy crossed State lines from Pennsylvania to Maryland." (ECF No. 17, at 3). Thus, he appears to be premising personal jurisdiction on the civil RICO statute and the conspiracy theory of personal jurisdiction.

Under Rules 4(k)(1)(A) and (C) of the Federal Rules of Civil Procedure, a federal court may exercise jurisdiction over a defendant's person in the manner provided by state law *or when*

*otherwise authorized by federal statute.*[6]  Section 1965(d) of
RICO provides that "[a]ll other process in any action or
proceeding under this chapter may be served on any person in any
judicial district in which such person resides, is found, has an
agent, or transacts his affairs."  The United States Court of
Appeals for the Fourth Circuit has construed Section 1965(d) as
"authoriz[ing] nationwide service of process and, thus, the
exercise of personal jurisdiction in any district court."
*D'Addario v. Geller*, 264 F.Supp.2d 367, 386 (E.D.Va. 2003)
(*citing ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626
(4th Cir. 1997)).  Therefore, in this circuit, service of process
on a RICO defendant in a judicial district where that defendant
resides establishes personal jurisdiction in another judicial
district, provided that the assertion of jurisdiction comports
with due process.  *ESAB Grp.*, 126 F.3d at 626 ("[W]here, as
here, Congress has authorized nationwide service of
process . . . so long as the assertion of jurisdiction over the
defendant is compatible with due process, the service of process
is sufficient to establish the jurisdiction of the federal court
over the person of the defendant.") (internal quotation marks
omitted).  Where due process permits the exercise of personal
jurisdiction under the RICO statute, a defendant can preclude a

---

[6] Plaintiff does not identify – either in his complaint or
the opposition – any applicable section of the Maryland Long-Arm
Statute.  Nor does it appear that any section applies here.

plaintiff's reliance on the nationwide service of process provision only by showing that the RICO claim is "wholly immaterial or insubstantial." *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 549 (E.D.Va. 2009) (*quoting ESAB Grp.*, 126 F.3d at 629).

Here, both Defendants were served in Pennsylvania, thus they can defeat personal jurisdiction in Maryland under RICO only by showing that due process would be violated or that Plaintiff's RICO claim is not colorable. (ECF Nos. 8-7 & 8-8); *see D'Addario*, 264 F.Supp.2d at 387.[7] A civil RICO claim is without color where it is "insubstantial, implausible, . . . or otherwise devoid of merit." *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 271 (D.S.C. 1999) (internal quotation marks and citations omitted). A RICO claim is colorable "if it is arguable and nonfrivolous, whether or not it would succeed on

---

[7] Because Plaintiff invokes a federal statute as conferring personal jurisdiction, the Due Process Clause of the Fifth Amendment – rather than that of the Fourteenth Amendment – applies to protect "the liberty interests of individuals against unfair burden and inconvenience." *ESAB Grp.*, 126 F.3d at 626. Where a defendant is located within the United States, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 627 (*quoting Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 947 (11th Cir. 1997); *see also D'Addario*, 264 F.Supp.2d at 387 ("The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent.") (internal quotation marks omitted). Here, Defendants do not argue that they will experience any inconvenience by having to litigate in Maryland.

the merits." *Id.* (internal quotation marks and citations omitted). A claim can be colorable but ultimately fail to satisfy the pleading requirements under Rule 12(b)(6). *See D'Addario*, 264 F.Supp.2d at 389 n.26 (E.D.Va. 2003) (explaining that although a RICO claim was colorable for purposes of section 1965(a), the operative pleading likely required amendment to include "greater specificity" in order to survive a dispositive motion).

In assessing whether a claim is "colorable," courts look to whether a plaintiff pleads a RICO violation by alleging: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, as well as (5) injury in the plaintiff's business or property (6) by reason of the RICO violation. *D'Addario*, 265 F.Supp.2d at 288 (internal quotation marks omitted); *see also Noble Sec.*, 611 F.Supp.2d at 550 (analyzing whether the plaintiff had pled the elements of a RICO violation to determine whether its claim was "colorable").[8] The statute defines several of the operative terms. "Enterprise," as set forth in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity,

---

[8] The amended complaint asserts violations of Section 1962(c), which makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

11

and any union or group of individuals associated in fact
although not a legal entity." A "pattern of racketeering
activity," requires at least two predicate acts that "are
related or that constitute or pose a threat of continued
criminal activity." *Al-Abood v. El-Shamari*, 217 F.3d 225, 238
(4th Cir. 2000). "Racketeering activity" is defined by statute
as "any act which is indictable" under a number of enumerated
criminal provisions. 18 U.S.C. § 1961(1). A "pattern of
racketeering activity," moreover, "requires at least two acts of
racketeering activity, one of which occurred after the effective
date of [RICO] and the last of which occurred within ten years
(excluding any period of imprisonment) after the commission of a
prior act of racketeering activity." *Id.* § 1961(5).

None of the allegations in Plaintiff's complaint give rise
to a colorable civil RICO claim. The gravamen of Plaintiff's
civil racketeering claim is that all of the Defendants conspired
to facilitate and cover up the affair between Dr. Trost and
Annette Wallace, Plaintiff's ex-wife, and that during this
adulterous relationship, Mrs. Wallace failed properly to account
for income and expenses of Amish Builders, causing the company's
demise. To support his civil RICO claim premised on a
conspiracy among all of the Defendants to damage his business,
Plaintiff merely points to unrelated acts allegedly undertaken
by each Defendant that were unfavorable to Plaintiff in an

effort to show that they formed an enterprise and engaged in a pattern of racketeering activity. The fact that the Wiley Defendants did not provide Annette Wallace's prescription records to Plaintiff or that the Diamantoni Defendants did not report the alleged affair in no way signals their participation in an enterprise engaged in a pattern of racketeering activity.[9] Nor is there any discernable connection between actions allegedly undertaken by any of the Defendants as part of an enterprise engaged in a pattern of racketeering activity (rather than individual acts) and Plaintiff's alleged injury – the demise of Amish Builders. *See, e.g., Khepera-Bey v. CitiFinancial Auto Corp.*, Civ. Action No. ELH-11-3756, 2012 WL 1856532, at *9 (D.Md. May 18, 2012) ("plaintiff has not identified any facts that would implicate defendant in a pattern of racketeering activity, or organized, long-term habitual criminal activity" (internal quotation marks omitted)). Plaintiff points to isolated predicate acts such as embezzlement and arson, allegedly undertaken by Annette Wallace and Dr. Trost, respectively, which in no plausible way are connected to the conduct of an enterprise through which Plaintiff alleges all

---

[9] Moreover, as the Wiley Defendants point out, they were under no obligation to produce to Plaintiff the records of *his wife's* drug prescriptions, irrespective of the fact that he was allegedly accompanied by his divorce attorney at the time he requested these records.

Defendants operated. Plaintiff's RICO claim is "wholly insubstantial and immaterial," precluding reliance on that statute's nationwide service of process provision to establish *in personam* jurisdiction.

Any attempt to premise personal jurisdiction on the conspiracy theory is similarly unavailing. "The conspiracy theory of personal jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant without sufficient contacts with the forum if the nonresident defendant was part of a conspiracy that committed jurisdictionally sufficient acts within the forum."[10]   *AGV Sports Group, Inc. v.*

---

[10] The *Cawley* court described the theory as when:

> (1) two or more individuals conspire to do something
>
> (2) that they could reasonably expect to lead to consequences in a particular forum, if
>
> (3) one co-conspirator commits overt acts in furtherance of the conspiracy; and
>
> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum.

*Cawley v. Bloch*, 544 F.Supp. 133, 135 (D.Md. 1982).

*Protus IP Solutions, Inc.*, Civ. Action No. RDB-08-3388, 2009 WL 1921152, at *3 (D.Md. July 1, 2009); *Mackey v. Compass Marketing*, 391 Md. 117, 127 (2006) ("the conspiracy theory permits certain actions done in furtherance of a conspiracy by one co-conspirator to be attributed to other co-conspirators for jurisdictional purposes."). While the theory requires that the conspiracy have sufficient ties to the forum state, it also, as a foundational matter, requires that the plaintiff allege a conspiracy. Here, Plaintiff's conclusory allegations that all Defendants conspired together to ruin his business are implausible. *See, e.g., Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 330 (4th Cir. 2013) ("the plaintiffs' allegations of conspiracy are conclusory and speculative and do not satisfy the requirements for establishing a conspiracy theory of personal jurisdiction.").

Based on the foregoing, Plaintiff cannot establish that personal jurisdiction exists over the Wiley Defendants.[11]

---

[11] In their initial motion to dismiss, the Diamantoni Defendants did not argue that the court lacks personal jurisdiction over them. In their reply brief, the Diamantoni Defendants state that they "hereby, by reference, incorporate the arguments made by the other defendants to dismiss this case." (ECF No. 27, at 1). Jeffrey Trost does not raise personal jurisdiction at all.

Lack of personal jurisdiction must be asserted by motion or in the answer. Fed.R.Civ.P. 12(b). The reply brief is not a motion, thus the defense has been waived as to the Diamantoni Defendants and Jeffrey Trost. *See, e.g., Topiwala v. Wessell*,

**B. Motions to Dismiss Filed by the Diamantoni Defendants and Dr. Trost**

The Diamantoni Defendants and Dr. Trost argue that Plaintiff's claims are time-barred and that he fails to state a civil RICO claim.[12] The civil RICO claim against these Defendants is premised on the same facts discussed above, which do not amount to a colorable civil RICO claim. Because the RICO claim is not even colorable under the personal jurisdiction analysis, it follows that Plaintiff also fails to state a claim.[13] Accordingly, the motions to dismiss filed by the Diamantoni Defendants and Dr. Trost will also be granted.

---

Civ. No. WDQ-11-0543, 2012 WL 122411, at *6 (D.Md. Jan. 12, 2012) (declining to address lack of personal jurisdiction defense raised for the first time in a reply brief). The fact that a different action filed by Plaintiff against these same four defendants was dismissed for lack of personal jurisdiction is inapposite. *See Wallace v. Trost*, Civ. Action No. DKC 13-0101, 2013 WL 1316453, at *3-4 (D.Md. Mar. 26, 2013). In the prior litigation, these defendants raised lack of personal jurisdiction in their motions to dismiss.

[12] In their reply brief, the Diamantoni Defendants raised for the first time that Plaintiff is awaiting sentencing in a criminal proceedings in another jurisdiction. (ECF No. 27, at 2-3). Plaintiff filed a surreply (ECF No. 34), objecting to the argument made in the reply brief and the reference to the criminal proceedings against him. (ECF No. 34). Plaintiff also moved to strike the reply brief. (ECF No. 32). Plaintiff has offered no basis for striking the reply brief in full, as Defendants are entitled to file a reply brief after Plaintiff submits an opposition to the original motion. The information regarding his criminal proceedings is wholly irrelevant to Defendants' motion to dismiss and has not been considered.

[13] Although the statute of limitations argument need not be addressed, it is worth noting that Plaintiff's civil RICO claim

16

**C. Annette Wallace, James Elia, Sam Blank, and Luke Beiler**

Annette Wallace, Luke Beiler, and Sam Blank answered Plaintiff's amended complaint, stating that they strongly deny all the allegations contained therein. (ECF No. 7). The record reflects that a summons was never returned as executed as to James Elia. (*See* ECF No. 8).

Although these four Defendants have not sought dismissal at this time, they have not waived their right to do so. Because Plaintiff's allegations in support of the civil RICO claim are identical with respect to all Defendants, the civil RICO claim as to these four Defendants also is subject to dismissal for the same reasons discussed above. The court will *sua sponte* dismiss the case as to all of the remaining Defendants. *See Swarey v.*

---

likely is time-barred. Plaintiff seems to think that his RICO claim is timely because he has alleged two acts of racketeering occurring within ten years. (ECF No. 19, at 6). The statute of limitations for a civil RICO claim is four years, not ten. The Fourth Circuit has held that "the statutory period [for a RICO claim] begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir. 1987); *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[D]iscovery of the injury . . . is what starts the clock."). Plaintiff's own allegations suggest that he became aware of the injury to his business by December 30, 2004, when a receiver took over his business (and allegedly caused further damage to Amish Builders). (ECF No. 3 ¶ 20). A letter – dated November 22, 2005 – from Plaintiff's attorney at the time, indicates Plaintiff's knowledge that the receiver allegedly further harmed the company's business operations. (ECF No. 3-1). At the latest, Plaintiff discovered the injury by 2005. Plaintiff did not file this lawsuit until 2013.

*Desert Capital REIT, Inc.*, Civ. Action No. DKC 11-3615, 2010 WL 4208057, at *15 (D.Md. Sept. 20, 2012) (*sua sponte* dismissing civil RICO count as to defendants who did not move for dismissal because plaintiffs' allegations in support of their RICO count was identical as to all of the defendants); *Hawkins v. Chick*, No. DKC 09-0661, 2009 WL 4017953, at *6-7 (D.Md. Nov. 19, 2009) (dismissing RICO claims *sua sponte* as to all defendants, including those who had not affirmatively sought such relief, where the plaintiff failed to allege a necessary element of a RICO violation); *Chong Su Yi v. Social Sec. Admin.*, 554 F.App'x 247, 248 (4th Cir. 2014) ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid."); *Mallard v. United States Dist. Court*, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

    **D. Plaintiff's Motions**

    Because the amended complaint will be dismissed in its entirety against all Defendants for the reasons explained above, Plaintiff's motions for a more definite statement from Sam Blank, Luke Beiler, and Annette Wallace, (ECF No. 35), motion to show status of pending motions (ECF No. 38), and motion for summary judgment (ECF Nos. 39 & 41), will be denied as moot.

## IV. Conclusion

For the foregoing reasons, the three motions to dismiss will be granted.  Plaintiff's motion to strike will be denied. The remaining motions by Plaintiff will be denied as moot.  A separate order will follow.

```
                     /s/
_____
DEBORAH K. CHASANOW
United States District Judge
```